# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DAVID GECHT,　　　Petitioner,　　　v.　GUY PIERCE,　　　Respondent. | ) ) ) ) ) No. 05 C 4524 ) ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

Petitioner David Gecht ("Gecht") was convicted of first-degree murder during a jury trial in March of 2000. The trial judge sentenced him to 45 years in prison. He is currently in the custody of the State of Illinois Department of Corrections and is incarcerated at the Pontiac Correctional Center. After exhausting all of his remedies in the Illinois state courts, Gecht filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below, I deny his petition.

The facts that emerged from Gecht's trial proceedings are as follows:[1] in the early morning hours of January 29, 1999, Roberto Cruz ("Cruz"), a leader of the Spanish Lords street gang, was shot and killed while leaving a Chicago bar named Bristol's Nightclub ("Bristol's"). Several weeks later, while Roberto Hernandez ("Hernandez") was in police custody for questioning on an unrelated crime, Chicago police questioned him about Cruz's death and he told them that he had knowledge that Richard Kwil ("Kwil") had shot Cruz. The police then located Kwil, who was either in or had just been in police custody on investigation of a complaint for criminal trespass to a vehicle, where the complainant was someone named "Jamie Gecht" (Gecht's sister). Kwil spoke with the police and told them that the Gecht killed Cruz. He told the police that he had assisted Gecht as a lookout during the shooting. He gave the police additional details about the killing that were corroborated by physical evidence the police had obtained (such as the location of the body and shell casings). He also told the police that after the shooting, Gecht

---

[1]I have reviewed the entire record of the state court proceedings provided by the respondent. In addition, the appellate court summarized many of these facts on Gecht's direct appeal and Gecht has not rebutted them, so this court can presume they are correct. 28 U.S.C.A. § 2254(e)(1); *Ward v. Hinsley*, 377 F.3d 719, 721 (7th Cir. 2004).

had taken the gun used to shoot Cruz and had hidden it in the bricks of a nearby building, but that the gun was now located in an apartment where Kwil was staying. The police went to that apartment and recovered a gun. They then went to Gecht's mother's house, entered the home without a warrant, and arrested Gecht.

Police took Gecht back to the police station. At trial the prosecution presented evidence that at this time Gecht signed a statement in which he admitted that he was a member of the Insane Unknown street gang, and that the night of Cruz's murder he went with Hernandez and Kwil to a bar where they believed Cruz had gone. At that time Gecht took a nine-millimeter pistol and hid it in some bushes. He then waited outside until he saw Cruz leave the bar. Gecht grabbed the gun from the bushes and, as Cruz went to his car, approached him and shot him multiple times. Gecht, Hernandez and Kwil then fled.

Hernandez, Kwil and Gecht were each charged with Cruz's murder. All three were tried in a joint proceeding, Kwil in a bench trial and Hernandez and Gecht by separate juries. Prior to the trial, Gecht's counsel unsuccessfully moved to suppress his statement to the police as being involuntary and the fruit of an

arrest without probable cause. After a hearing the court denied that motion.

During Gecht's opening statement, Gecht's counsel told the jury that they would hear evidence about a series of facts that would help establish Gecht's innocence, including evidence about other purported leads the police did not follow, other potential suspects the police purportedly did not interview or consider, and evidence that Gecht had no criminal history. The prosecution objected several times during the defense's opening statement and the court sustained those objections and repeatedly instructed the defense to move along. After the conclusion of the opening statement the prosecution moved to exclude further reference to the evidence that Gecht's counsel had referenced in his opening statement, and the judge granted that motion. In granting the motion, the judge opined that he had "never heard an opening statement that contained so much reference to inadmissible evidence that – you're going to have to live through this. Unless you can show me some theory of admissibility why it would be placed before your jury, it's going to come back to haunt you."

The prosecution called several witnesses against Gecht at trial. James Shadur, a Chicago Police Department forensic

4

investigator, provided general testimony about the crime scene. Maria Lozada ("Lozada"), Kwil's friend and roommate, testified about the police coming to her apartment and finding a gun there. Beth Patty, a forensic scientist and expert in firearms identification, testified that she matched cartridges found at the scene to the gun found at Lozada's. Dr. Barry Lifschultz, a forensic pathologist, testified that Cruz died of multiple gunshot wounds. Detective Reynaldo Guevara of the Chicago Police Department was in charge of the investigation of Cruz's death, and testified about the course of investigation and the taking of statements from the defendants. Former Assistant State's Attorney Brendan McGuire testified about Gecht's statement to the policy in which he admitted shooting Cruz. Colleen Miller ("Miller"), Gecht's girlfriend at the time of Cruz's killing, testified that early in the morning of January 29, 1999, Gecht came home and told her that he had just shot the leader of the Spanish Lords seven times. Officer Joe Rodriguez, a member of the Chicago Police Department assigned to the FBI Gang Task Force, testified about the gang activity of the Insane Unknowns and the Spanish Lords, and testified that at the time of Cruz's death, Cruz was the leader of the Spanish Lords and Hernandez was the chief enforcer for the Insane Unknowns. He further testified

that at the time of Cruz's death the two gangs were fighting with one another.[2]

Gecht also presented several witnesses. First, the parties stipulated that if Jennifer Ditullo was called to testify, she would testify that she was a dancer at Bristol's and was working in the early morning of January 29. She would further testify that during her shift Cruz wanted to introduce her to someone, but she said she did not have time to meet that person. As she was leaving the bar with her boyfriend and was driving away, she heard gunshots and saw a person running from the scene who was similar in appearance to the person to whom Cruz wanted to introduce her. She also saw two men running down the street, one wearing a light-colored top. Second, Jamie Gecht, Gecht's sister, testified that she had reported her car stolen shortly before Cruz's death. She testified that Kwil was arrested for the theft and she signed a complaint against him. Third, Wilfredo Rosa, a bouncer at Bristol's who was working the night that Cruz was killed, also testified. He said that two men came into Bristol's about 1:00 a.m. on January 29, and that this was

---

[2]Cruz's mother Raquel Roque also provided background testimony about her son. The parties also stipulated that an employee of a car rental company, if called to testify, would testify about a car that Hernandez's brother had rented. This car was referenced in defendants' statements to the police.

6

the first time he had ever seen them at the bar. He said the men went straight to Cruz's table and began arguing with Cruz, and that "the whole situation was getting kind of hot." He believed that after arguing with Cruz the men immediately left the bar. He further testified that he did not recognize Hernandez or Kwil as being at Bristol's that evening.

Finally, Gecht himself testified. He claimed he had never been to Bristol's. He testified about the circumstances of his arrest and the statement he purportedly gave to the police, testifying that he was not allowed to eat or sleep while in police custody and was interrogated numerous times. He claimed that his confession was false and that detectives gave him the details about Cruz's murder that appeared in his statement. He claimed that Guevara and other officers beat him, and that he gave the statement because he was afraid. He further claimed that he never told Miller that he killed Cruz. On cross-examination, the state challenged his claims that the statement was not voluntary, going through the numerous facts in the statement that were true (such as family details and his personal background) and also challenged his claims that he was beaten.

During closing arguments, the prosecutor made several statements about Gecht's counsel, including that he "talks out of

both sides of his mouth," was trying to get Gecht a "freebie" or a "free murder," and referenced the evidence that Gecht's counsel said the jury would see that would exonerate Gecht, pointing out that Gecht had not introduced this evidence. The prosecutor reiterated that the case was about "promises made and promises kept." Gecht's counsel did not object to these statements.

After deliberation the jury found Gecht guilty of first-degree murder. The court sentenced Gecht to 45 years in the Illinois Department of Corrections. Gecht's counsel made a motion for a new trial that was denied. In this motion Gecht's counsel did not object to the prosecutor's statements during closing arguments. Gecht then appealed his conviction to the Illinois Court of Appeals. He argued that (1) his trial counsel was ineffective for referencing evidence in the opening statement that was inadmissible; (2) the prosecutor committed misconduct by making prejudicial statements in his closing argument; and (3) the police lacked probable cause to arrest him. The appellate court rejected all three arguments, finding that (1) his ineffective assistance argument was moot as his confession and other evidence would have still resulted in a conviction; (2) his prosecutorial misconduct argument was waived because Gecht's counsel did not object, and Gecht would have been convicted

without these statements; and (3) the police had probable cause to arrest Gecht. *See People v. Gecht*, No. 00-2286, slip op. at 19-24 (Ill. App. Ct. Nov. 15, 2002). Gecht then filed a petition for leave to appeal to the Illinois Supreme Court that raised the same arguments, but the Supreme Court denied his petition. *See People v. Gecht*, No. 00-2286, slip op. at 1 (Ill. Apr. 2, 2003).

Gecht then filed a petition for post-conviction relief, arguing that (1) his appellate counsel was ineffective for failing to argue that there were no exigent circumstances to arrest him in his home without a warrant; and (2) his appellate counsel was ineffective in not arguing that his trial counsel should have preserved his prosecutorial misconduct argument for appeal; and (3) his trial counsel was ineffective for failing to object to the prosecutor's statements during closing arguments. The circuit court rejected these arguments, finding that (1) Gecht's appellate counsel was not ineffective for failing to raise the exigent circumstances argument because there were exigent circumstances; (2) neither Gecht's trial nor appellate counsel was ineffective in addressing the prosecutor's closing statement because, as the appellate court found on direct appeal, the comments did not deny Gecht a fair trial since he would have still been convicted on the basis of the other evidence. *People*

*v. Gecht*, No. 99-7227, slip op. at 4-7 (Cir. Ct. Cook Co. Aug. 1, 2003). Gecht then appealed this dismissal to the appellate court, raising the same grounds, but that court affirmed the decision of the circuit court. *People v. Gecht*, No. 03-3096, slip op. at 2 (Ill. App. Ct. Dec. 10, 2004). Gecht's subsequent petition for leave to appeal to the Illinois Supreme Court on those same grounds was also denied. *People v. Gecht*, 214 Ill.2d 540, 294 Ill. Dec. 5, 830 N.E.2d 5 (2005).

Gecht then filed the instant petition for writ of habeas corpus. He raises six grounds for review, the same six grounds raised in his direct appeal and motion for post-conviction relief: (1) the police lacked probable cause to arrest him because the only witness connecting Gecht to Cruz's murder was unreliable; (2) Gecht's appellate counsel was ineffective because, in arguing that the police lacked probable cause to arrest Gecht, he failed to argue that there were no exigent circumstances to arrest Gecht in his home; (3) the prosecutor committed misconduct by including improper and prejudicial remarks in his closing statement, thus denying Gecht a fair trial; (4) Gecht's trial counsel was ineffective for failing to object to the prosecutor's statements and therefore failing to preserve the issue for Gecht on appeal; (5) Gecht's appellate

counsel was ineffective by failing to raise the claim of ineffective assistance of trial counsel due to trial counsel's failure to object to the prosecutorial misconduct; and (6) Gecht's trial counsel was ineffective because he failed to understand or apply the rules of evidence, leading him to promise the jury evidence that was later excluded.[3] As discussed below, these arguments are without merit.

## II.

Under federal law, petitions for writs of habeas corpus are given a "highly deferential standard of review." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)); *see also* 28 U.S.C.A. § 2254 (2006). Under this standard, I must give a state court's decision in Gecht's case the benefit of the doubt and only intervene if that decision was "objectively unreasonable." *Woodford*, 537 U.S. at 24-27. Under the terms of § 2254, I may grant Gecht's petition only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light

---

[3]I will give Gecht's petition a generous interpretation since it was prepared without the assistance of counsel. *See Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

of the evidence" presented during the state court proceedings. 28 U.S.C.A. § 2254(d).

In addition to this deferential standard, I generally may only grant a petition for a writ of habeas corpus where "the applicant has exhausted the remedies available in the courts of the State" and where the applicant has not procedurally defaulted his claims. 28 U.S.C.A. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). These limitations are intended to allow state courts a fair opportunity to hear and act on a petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Procedural default may occur where the petitioner did not comply with state procedural requirements during his appeals in state court such that the state court found these failures to be an "independent and adequate" state law ground for denying his claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). When a state court relies on a state procedural ground to avoid reaching the merits of a petitioner's claim, that ground must be clearly and expressly relied upon and must be firmly established and regularly followed. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). To avoid procedural default, a petitioner must, at minimum, "invok[e] one complete round of the State's established appellate review process" for each of his claims. *O'Sullivan*,

526 U.S. at 845. In Illinois, this means one full round of appeals up to and including the filing of a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 845-46; *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (requiring a claim to be raised through one full round of appeals, either on direct appeal of the petitioner's conviction or through post-conviction proceedings, to avoid procedural default).

Here, the respondent concedes that Gecht has exhausted all available state remedies and that all but one of his claims is not procedurally defaulted; he brought each of his claims through one full round of review in the Illinois state courts, either on direct appeal or in post-conviction proceedings. However, irrespective of whether any of these claims are procedurally defaulted, I may also deny his claims on the merits. 28 U.S.C.A. § 2254(d). I therefore consider each of his claims in turn below.

III.

First, Gecht asserts that the trial court improperly denied his motion to quash his arrest. Here, as before the trial court, Gecht argues that the police did not have probable cause to arrest him because the only source implicating him was Kwil, a codefendant who Gecht contends was unreliable because he had

13

motive to redirect blame away from himself, and because at the time the police spoke to Kwil he was in police custody or had just been released from police custody on suspicion of a complaint filed against him by Gecht's sister. Presumably Gecht raises this argument because, were his arrest without probable cause, the statement that he gave to the police and that was a key piece of evidence leading to his conviction should have been excluded at trial. *See, e.g., Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

While Gecht has not procedurally defaulted on this claim, *see Lewis*, 390 F.3d at 1025, there is another bar to Gecht raising this claim now. The Supreme Court has held that petitioners may not raise Fourth Amendment claims in a petition for writ of habeas corpus where the State has already provided an opportunity for "full and fair litigation" of the claim. *Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003) ("'[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result.").

The Seventh Circuit has held that a "full and fair" opportunity means that

> (1) [a petitioner] has clearly informed the state court of the factual basis for that

> claim and has argued that those facts
> constitute a violation of his fourth
> amendment rights and (2) the state court has
> carefully and thoroughly analyzed the facts
> and (3) applied the proper constitutional
> case law to the facts.

*Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002) (citing *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)). The Seventh Circuit has said that "it would taken an 'egregious error' to imply that the state judges have closed their ears and minds to argument–and it is the latter circumstance, not the error itself, that would justify relief under *Stone*." *Hampton*, 296 F.3d at 564 (quoting *Turentine v. Miller*, 80 F.3d 222, 226 (7th Cir. 1996)).

In Gecht's case, he has already had a "full and fair" opportunity to litigate the question of whether the police had probable cause to arrest him. At trial and on appeal he clearly argued that the police lacked probable cause to arrest him and that any evidence seized as a result should be excluded. The trial court held a pre-trial hearing in which it heard testimony and arguments as to the information the police had when they arrested Gecht, and the manner of that arrest. The trial court issued an oral opinion, relying on *People v. James*, 118 Ill.2d 214, 113 Ill. Dec. 86, 514 N.E.2d 998 (1987), concluding that the police had probable cause to arrest Gecht based on Kwil's

15

statements to the police. The court concluded that Kwil's statement was supported by the physical evidence found at the scene, and that the statement was additionally reliable because Kwil's statement implicated himself in the murder. *People v. Gecht*, No. 99-7227, Report of Proceedings, at 77-80. The appellate court, also relying on *James*, addressed these same factors in concluding that the arrest was supported by probable cause, and also noted there was no evidence that Kwil was induced to give his statement by any promise of leniency. *See People v. Gecht*, No. 00-2286, slip op. at 23-24. In relying on *James*, both courts applied proper constitutional law to the facts; that case cites *Illinois v. Gates*, 462 U.S. 213 (1983) and other Supreme Court precedent that accurately set forth the constitutional requirements for probable cause and indicia of reliability in statements supporting a determination of probable cause. *See James*, 118 Ill.2d at 222-25, 113 Ill. Dec. at 90-91, 514 N.E.2d at 1002-04. Therefore, because Gecht cannot demonstrate the state court denied him a full and fair opportunity to litigate this claim, I may not consider it now. *See Cabrera*, 324 F.3d at 531-52.

IV.

16

Gecht next argues that his appellate counsel was ineffective because, in arguing on appeal that the police lacked probable cause to arrest Gecht, he failed to argue that there were no exigent circumstances to arrest Gecht in his home. To set forth a claim for ineffective assistance, Gecht must demonstrate that (1) his appellate counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced Gecht as to deny him a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 674 (1984). In this context, prejudice means that the issue not raised "may have resulted in a reversal of the conviction or an order for a new trial." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (quoting *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001)).[4]

Here, Gecht cannot demonstrate that his appellate counsel's failure to argue the lack of exigency prejudiced him because this issue was irrelevant to the admissibility of his confession. As discussed in the previous section, the trial court appropriately

---

[4]Where a petitioner raises an ineffective assistance of appellate counsel claim, a court must also compare the issue appellate counsel did not raise with those that were raised. *Lee*, 328 F.3d at 900-01 (citing *Winters*, 274 F.3d at 1167). If the issue that was not raised was "both obvious and clearly stronger" than the issues that were raised, then appellate counsel's failure to raise that issue is objectively deficient. *Id.* However, for the reasons discussed in this opinion, I need not make such a comparison to dispose of this ineffective assistance claim, so I do not address this here.

17

found that the police had probable cause to arrest Gecht (and Gecht's appellate counsel also subsequently argued the lack of probable cause on appeal). And, the Supreme Court held in *New York v. Harris*, 495 U.S. 14 (1990), that the exclusionary rule of *Payton v. New York*, 445 U.S. 573 (1980), does not operate to exclude statements made at the police station following a warrantless entry into the defendant's home regardless of whether that entry is supported by exigent circumstances. *See Harris*, 495 U.S. at 17. The Supreme Court determined in *Harris* that the exclusionary rule is designed to "protect the physical integrity of the home; it was not intended to grant criminal suspects . . . protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime." *Id.*[5] Therefore, there was no prejudice from Gecht's appellate counsel failing to raise the issue of exigency because this argument would have had no effect on the outcome of his trial; it would not have resulted in the exclusion of any evidence.[6] Gecht's appellate counsel properly focused on the

---

[5]The Illinois Supreme Court has recognized this principle, *see, e.g., People v. Segoviano*, 189 Ill.2d 228, 244, 244 Ill. Dec. 388, 396, 725 N.E.2d 1275, 1283 (2000), further underscoring the lack of prejudice in this case.

[6]In ruling on Gecht's original motion to suppress at trial, the trial court noted as much. *People v. Gecht*, No. 99-7227, Report of Proceedings, at 80 ("Exigent circumstances normally relate to

18

question of probable cause, an argument that could have actually affected the introduction of evidence at trial. Therefore, Gecht's claim fails.

V.

Next, Gecht contends that the prosecutor committed misconduct by including improper and prejudicial remarks in his closing statement, thus denying Gecht a fair trial. Specifically, Gecht contends that the prosecutor ridiculed defense counsel, accused defense counsel of deception, framed the case as a contest between the prosecutor's kept promises and defense counsel's broken promises (shifting the jurors' attention away from the presented evidence and instead towards inadequacies of defense counsel), and suggested that defense counsel was trying to win his client a "free murder".

Respondent contends that Gecht has procedurally defaulted on this claim. Gecht raised this argument on direct appeal to the state appellate court. That court concluded that it need not determine whether the remarks were proper or improper because "Gecht waived this issue by not objecting to all of the statements at trial and by failing to include them in the motion

_____

Payton violations. And here certainly there could be none because there was no evidence seized from Mr. Gecht.").

19

for new trial." *People v. Gecht*, No. 00-2286, slip op. at 21.[7]
The appellate court went on to address whether the prosecutor's
comments constituted "plain error" under Illinois Supreme Court
Rule 615(a), and determined that there was no plain error because
the evidence at his trial was not "closely-balanced" such that
the appellate court "would be justified in overturning the jury's
verdict." *Id.* at 22-23 (internal citation omitted).

Gecht has procedurally defaulted on this prosecutorial
misconduct claim because the appellate court determined that his
failure to object to the misconduct at trial or to raise it with
specificity in the post-trial motion constituted a waiver of the
claim. *See Coleman*, 501 U.S. at 729-30; *see also Wright v.
Walls*, 288 F.3d 937, 947 (7th Cir. 2002) (holding that waiver is
an independent and adequate Illinois state law ground). The
appellate court clearly and expressly relied upon the waiver
ground, and Gecht has presented no evidence that the waiver
doctrine is not firmly established or is only irregularly
followed. *See Braun*, 227 F.3d at 912. Although Gecht argues

---

[7]The appellate court also cited *People v. Robinson*, 238 Ill. App.
3d 48, 56, 179 Ill. Dec. 290, 296, 606 N.E.2d 122, 128 (1992) and
*People v. Buchanan*, 211 Ill. App. 3d 305, 312, 155 Ill. Dec. 831,
837, 570 N.E.2d 344, 350 (1991), and concluded that because Gecht
failed to raise any specific examples of prosecutorial misconduct
in his post-trial motion, this claim was also forfeited. *People v.
Gecht*, No. 00-2286, slip op. at 21.

20

that the appellate court did address the argument on the merits by considering Gecht's "plain error" argument, the Seventh Circuit has previously held that "plain error" analysis does not constitute a consideration of the claim on the merits. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005).

Because Gecht has procedurally defaulted on this claim, I may only consider it if Gecht can show cause for the default and actual prejudice as a result of the prosecutor's actions, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Setting aside the question of cause,[8] a showing of prejudice requires that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder could have found the applicant guilty of the underlying offense." 28 U.S.C.A. § 2254(e)(2); *see also Spreitzer v. Schomig*, 219 F.3d 639, 648 n.1 (7th Cir. 2000) (explaining that subsection (e)(2) codified the "cause and prejudice" test for procedurally defaulted claims).

---

[8]Gecht has properly argued that his trial counsel's ineffective assistance was cause for this procedural default because his counsel failed to object to the statements as the prosecutor made them and failed to include them with sufficient specificity in his motion for a new trial. Ineffective assistance of counsel, if proven, may be considered cause for procedural default. *Farrell*, 939 F.2d at 411 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

21

Here, the prosecution introduced evidence at trial of Gecht's detailed statement to the police admitting that he shot Cruz. His former girlfriend testified that he told her the same. Even without the prosecutor's statements, however improper they may have been, a reasonable factfinder could have found Gecht guilty of Cruz's murder. Likewise, Gecht cannot show that a fundamental miscarriage of justice has occurred because he cannot show "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).[9] Therefore, this claim is without merit.

## VI.

In a related argument to his prosecutorial misconduct argument, Gecht contends that his trial counsel was ineffective for failing to object to the prosecutor's closing argument, thereby failing to preserve the issue for Gecht on appeal. As discussed above, to establish an ineffective assistance claim, Gecht must show that his trial counsel's failure to object fell

---

[9]For prosecutorial misconduct to constitute a due process violation that a federal court can remedy through a petition for writ of habeas corpus, the misconduct must affect the fairness of the trial. *See, e.g.*, *Richardson v. Briley*, 401 F.3d 794, 801 n.2 (7th Cir. 2005) ("It is important to note that prosecutorial misconduct is not an independent basis for habeas relief."); *see also Smith v. Phillips*, 455 U.S. 209, 220 n.10 (1982) ("[The] materiality requirement implicitly recognizes that the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes.").

below an objective standard of reasonableness, and that he was substantially prejudiced such that, but for this ineffectiveness, a finder of fact would have entertained a finding of reasonable doubt as to defendant's guilt. *Strickland*, 466 U.S. at 674.

The Illinois courts addressed Gecht's claim in his post-conviction relief proceedings in state court, and determined that Gecht was not prejudiced by his trial counsel's failure to object to the prosecution's remark because the appellate court hearing Gecht's claims on direct appeal still addressed the issue of prosecutorial misconduct. The Illinois court hearing his post-conviction claims stated:

> Specifically the [appellate] court held that the State's remarks did not affect petitioner's substantial rights, thus depriving him of a fair or impartial trial. The court also held that the evidence in the case was not so closely balanced that any error created by the comments would have the effect of denying petitioner a fair trial. Therefore, petitioner cannot show that he was prejudiced by trial counsel's failure to object to the State's remarks during trial.

*People v. Gecht*, 99-7227, slip op. at 7. The appellate court summarily affirmed this post-conviction opinion. *People v. Gecht*, No. 03-3096, slip op. at 2.

I do not now assess this claim in a vacuum, but rather I merely determine whether the state court proceedings "resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceedings. 28 U.S.C.A. § 2254(d); *see also Woodford*, 537 U.S. at 25 ("An *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (internal citation omitted). Here, the Illinois state court applied the correct test under *Strickland* and determined that under *Strickland*, Gecht could not show that he was prejudiced by his counsel's failure to object to the prosecutor's comment. Gecht cannot show that this conclusion was an unreasonable application of *Strickland* or any other established federal law. Therefore, this claim fails.

## VII.

Gecht further argues that his appellate counsel was ineffective because he failed to raise an ineffective assistance of trial counsel claim for trial counsel's silence on the prosecutorial misconduct. The Illinois court addressed this issue in ruling on Gecht's post-conviction motion for relief, finding that "because the court found that the comments did not deprive him of a fair trial and that the evidence against him was

24

great, [Gecht] has failed to show that he was prejudiced by appellate counsel's failure to raise ineffective assistance of trial counsel as an issue on appeal." *People v. Gecht*, 99-7227, slip op. at 7.

As discussed above, given the Illinois courts' reasonable application of *Strickland* to Gecht's ineffective assistance of trial counsel claim, Gecht has no cognizable *Strickland* argument for his trial counsel's actions. Therefore, Gecht has no cognizable ineffective assistance argument as to his appellate counsel—it is not ineffective to fail to raise a losing argument on appeal. *See, e.g., Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998). This claim therefore fails as well.

## VIII.

Finally, Gecht argues that his trial counsel was ineffective because he failed to understand or apply the rules of evidence, leading him to promise the jury evidence that was later excluded. Gecht argues that he was prejudiced when his trial counsel made several allegations to the jury during opening statements that he could not later substantiate with evidence. As outlined above, the proper test in assessing the effectiveness of counsel is set forth in *Strickland*, 466 U.S. at 474: the petitioner must demonstrate that counsel's performance fell below an objective

standard of reasonableness *and* that petitioner suffered substantial prejudice as a result. *Id.*

Also as discussed above, in assessing a petition for writ of habeas corpus I may not apply the *Strickland* test directly but rather must determine whether the lower court decision was an unreasonable application of federal law or was based on an unreasonable determination of the facts. 28 U.S.C.A. § 2254(d). When reviewing this claim on direct appeal, the Illinois appellate court properly applied the *Strickland* test in assessing defense counsel's effectiveness. *People v. Gecht*, No. 00-2286, slip op. at 19-20. The court determined that Gecht was not prejudiced by his trial counsel's actions because there was more than substantial evidence of Gecht's guilt, including a 25 page confession in the record. *Id.* The Illinois appellate court's application of *Strickland* was not so unreasonable as to overcome the deference I must accord under §2254(d)(1) to the state court's determination.[10] Therefore, this claim also fails.

---

[10]Even aside from the deference accorded this conclusion under § 2254, Gecht's claim is without merit. As the Illinois appellate court pointed out, any deficiency in trial counsel's performance is more than overcome by Gecht's own confession detailing his involvement in the crime. That confession was corroborated by other facts, including the location of the murder, identification of the gun used, knowledge of the type of bullets used, and Miller's testimony. *People v. Gecht*, No. 00-2286, slip op. at 19-21. Given the extraordinary weight of this evidence, Gecht cannot show that, but for his counsel's performance, a finder of fact

26

IX.

For the reasons detailed above, Gecht's petition is denied.

ENTER ORDER:

*Elaine E Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: September *19*, 2006

---

would have entertained a finding of reasonable doubt on Gecht's
guilt.   *See Strickland*, 466 U.S. at 674.   The evidence against
Gecht was simply too strong.